UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROSEHOFF, LTD.,

       Plaintiff,

    v.                                   21-CV-399-LJV-LGF
                                           DECISION & ORDER

CATACLEAN AMERICAS, LLC, *et al.*,

       Defendants.
_____

      This case is the latest skirmish in a prolonged dispute between Rosehoff, Ltd. ("Rosehoff"), a limited liability company based in the United Kingdom, and various United States-based companies and individuals who are purportedly infringing Rosehoff's intellectual property rights.  Rosehoff alleges that the defendants—Cataclean Americas, LLC ("Cataclean Americas"); Truscott Terrace Holdings, LLC; Truscott Terrace Holdings Group, LLC; Truscott Terrace International Holdings Group, LLC; and Gordon and Gregory Gannon—"repeated[ly], willful[ly], and egregious[ly] misappropriat[ed]" and unlawfully used "Rosehoff's intellectual property associated with the Cataclean fuel and exhaust system cleaner."  Docket Item 4 at ¶¶ 2-8 (capitalization removed).  On March 17, 2021, Rosehoff filed a complaint asserting claims under the Lanham Act, the New York General Business Law, and New York State common law, and about a month later it filed an amended complaint.  Docket Items 1, 4.

      On June 17, 2021, the defendants answered the amended complaint, Docket Item 5, and Cataclean Americas moved to dismiss about two months later, Docket Item 11.  Rosehoff responded to Cataclean Americas' motion to dismiss and cross-moved for summary judgment on September 13, 2021.  Docket Item 17.  Cataclean Americas

replied in further support of its motion to dismiss on September 27, 2021, Docket Item 18, and all defendants responded to Rosehoff's motion for summary judgment on November 22, 2021, Docket Item 22.  Rosehoff replied in further support of its motion for summary judgment on December 7, 2021.  Docket Item 24.

For the reasons that follow, Cataclean Americas' and Rosehoff's motions are both denied.

## **FACTUAL BACKGROUND**[1]

According to Rosehoff, Rosehoff and "its wholly-owned subsidiary, System Products U.K. Ltd. ("Systems Products"), are the exclusive owners of [] intellectual property associated with [] Cataclean," a "chemical compound fuel and exhaust system cleaner."  Docket Item 17-10 at ¶¶ 2-3.  Cataclean "cleans automobile catalytic converters" and therefore "obviat[es] the need for expensive repairs."  *Id.* at ¶ 2.  Rosehoff owns trademark registrations for the Cataclean mark as well as domestic and international patents for the Cataclean chemical compound.  *Id.* at ¶¶ 4-5; Docket Item 22 at 1.

In 2008, Rosehoff's principals and defendants Gordon and Gregory Gannon formed Cataclean Americas.  Docket Item 17-10 at ¶ 7; Docket Item 22 at 4.  Cataclean

---

[1] The following facts, viewed in the light most favorable to the defendants on the plaintiff's motion for summary judgment, *see Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011), are taken from the parties' statements of material facts, responses, and attached exhibits.  *See* Docket Items 17-10, 22, 24-2.  Because the Court denies Cataclean Americas' motion to dismiss based on defects in the motion, *see infra* at 7-10, the Court does not recite the facts alleged in the amended complaint in the light most favorable to the plaintiff as it ordinarily would in deciding a motion to dismiss, *see Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

Americas and Systems Products then executed a license agreement in July 2008. Docket Item 17-10 at ¶ 8; Docket Item 22 at 4. Although the parties contest the terms and effect of that license agreement, both sides agree that it permitted Cataclean Americas to sell Cataclean in the United States. *See* Docket Item 17-10 at ¶ 8; Docket Item 22 at 2.

The source of the parties' dispute lies in certain conflicting terms in the license agreement. More specifically, the license agreement apparently provides both that the agreement may be terminated and that the agreement is irrevocable. Clause 4.2.5 provides that "[System Products] may terminate this agreement" for a breach by Cataclean Americas; along the same lines, under clause 18, "[t]he contractual relationship can be dissolved prior to the expiry of the Term by either party without notice of termination if the other party materially breaches any term or provision of th[e] agreement or if compelling grounds are present." *See* Docket Item 17-5 at 8, 19; *see also id.* at 19 (listing five such compelling grounds). On the other hand, the agreement also explicitly says that it provides an "exclusive irrevocable licence [sic]." *See id.* at 5. The agreement does not explain how to reconcile those provisions.

The relationship between System Products and Cataclean Americas quickly soured, and Systems Products eventually invoked clauses 4.2.5 and 18 to purportedly terminate the agreement in 2011. Docket Item 17-10 at ¶¶ 11-12. Rosehoff maintains that the license agreement "was both revocable and non-exclusive" and that System Products' termination therefore was permissible. *Id.* at ¶¶ 9, 12. And according to Rosehoff, that termination "revoked the [] licenses, respective rights, and liabilities held by [Cataclean Americas] from Rosehoff and Systems Products to the Cataclean

intellectual property." *Id.* at ¶ 13.  Not surprisingly, the defendants maintain that clause 3.1 controls and that the license agreement is irrevocable.  *See* Docket Item 22-3 at 2-4.

Despite Systems Products' purported termination of the agreement, the defendants continued to associate themselves with the Cataclean product.  More specifically, in January 2014, counsel for Truscott Terrace Holdings "began to send cease and desist letters to Rosehoff and its suppliers and customers [] claiming various rights in the Cataclean product."  Docket Item 17-10 at ¶ 17.  And Gordon Gannon "continues to market himself as a Cataclean representative by claiming to be an International Product Manager and Marketing and Sales Specialist associated with [Cataclean Americas], us[ing] the Cataclean bottle to market himself on LinkedIn, and [] claim[ing] to be the contact person for potential United States government contracts on behalf of [Cataclean Americas]."  *Id.* at ¶ 22.  As a result, Rosehoff sent a letter to the Gannons in January 2021 "demand[ing] that [they] cease using the name Cataclean in any fashion [and] informing them that they have no legal right or license to use the Cataclean mark . . . and that doing so violates Rosehoff's rights."  *Id.* at ¶ 23 (capitalization removed); Docket Item 17-7 at 40-41.  The defendants did not respond to that letter.  Docket Item 17-10 at ¶ 24.

Rosehoff previously sued these defendants in this district and in the United Kingdom.  In 2012, Rosehoff sued the Gannons and Cataclean Americas in this district for trademark and patent infringement.  *See Rosehoff Ltd. v. Cataclean Americas LLC*, No. 12-cv-1143, Docket Item 1 (W.D.N.Y. Nov. 19, 2012).  That case was dismissed on May 30, 2013, because the license agreement included an enforceable forum selection clause requiring that disputes over the agreement be brought in "the courts of England

4

and Wales."² *See Rosehoff Ltd. v. Cataclean Americas LLC*, 2013 WL 2389725, at *3 (W.D.N.Y. May 30, 2013).

Less than a year later, Rosehoff filed another suit in this district, this time against all the defendants in this case except Cataclean Americas. *See Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, 14-cv-277, Docket Item 1 (W.D.N.Y. Apr. 16, 2014). In that case, Rosehoff alleged that those defendants "d[id] not have trade dress rights in a particular plastic bottle to hold a fuel-enhancement product[] or a copyright on the particular label for that product." *Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, 2020 WL 1659832, at *1 (W.D.N.Y. Mar. 27, 2020). On March 27, 2020, the court granted Rosehoff's motion for summary judgment in part and found that the defendants did not have trade dress rights in that bottle. *Id.* at *11.

Rosehoff also brought an action in the United Kingdom "to stop [the defendants'] efforts to monetarize and profit off the Cataclean product and UK trademark." Docket Item 17-10 at ¶ 20. That case ended with the court's "invalidat[ing] [the defendants'] attempts to register any of Cataclean's products and trademarks in their own name." *Id.*

---

² It is unclear why Rosehoff, the U.K.-based parent company of Systems Products, has repeatedly sued the defendants in this district despite a forum-selection clause that System Products presumably found favorable. Regardless, the defendants have not argued that the case must be dismissed because of that clause, and the Court considers the argument waived for the purposes of these motions. *See generally Power Auth. of N.Y. ex rel. Solar Liberty Energy Sys., Inc. v. Advanced Energy Indus., Inc.*, 2021 WL 4244280, at *2 (W.D.N.Y. Aug. 23, 2021) (collecting cases finding that forum selection clauses can be waived).

## **LEGAL PRINCIPLES**

I.    **MOTION TO DISMISS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

II.    **SUMMARY JUDGMENT**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant—that is, the party seeking summary judgment—has the burden of demonstrating that there is no disputed material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant may satisfy this burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *see* Fed. R. Civ. P. 56(c)(1)(B). Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).  If the nonmovant fails to do so, the court may grant summary judgment.  See Celotex, 477 U.S. at 322-23.

A material fact is one that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor."  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 465-66 (2d Cir. 2001).  But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."  Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

## DISCUSSION

### I.    CATACLEAN AMERICAS' MOTION TO DISMISS

About two months after answering the amended complaint, Cataclean Americas moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).[3]  Docket Items 5, 11. Cataclean Americas argues that Rosehoff cannot pursue its claims in this Court because Ross Baigent, Rosehoff's principal and "effective[] own[er]," entered into a covenant "not to fund or participate in any proceeding against" Cataclean Americas. Docket Item 11-1 at ¶ 13; Docket Item 11-2; Docket Item 11-4 at 3.  Rosehoff contends

---

[3] The other defendants did not join in Cataclean Americas' motion.  See Docket Item 11.

that Cataclean Americas' motion to dismiss is procedurally defective, relies on materials that cannot be considered on a motion to dismiss, and rests on a speculative chain of inference.  Docket Item 17-9 at 4-8.  This Court agrees that the motion is defective because it relies on documents outside the scope of a motion to dismiss.

"[A] motion to dismiss pursuant to Rule 12(b)(6) must be filed before an answer is interposed."  *Forbes v. Doe*, 2022 WL 170605, at *3 (W.D.N.Y. Jan. 18, 2022) (citing *Leather v. Eyck*, 180 F.3d 420, 423 n.4 (2d Cir. 1999)).  So Cataclean Americas, having answered the amended complaint, cannot now move to dismiss it under Rule 12(b)(6).  Nevertheless, a Rule 12(b)(6) motion should not necessarily be denied simply because the defendant already has filed an answer.  Instead, "[a] Rule 12(b)(6) motion filed after a defendant answers the complaint should be treated as a motion for judgment on the pleadings[] under Federal Rule of Civil Procedure 12(c)."  *Id.* (alterations omitted).

"In deciding a Rule 12(c) motion," the court "employs the same standard applicable to dismissals pursuant to Rule 12(b)(6)."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (alterations omitted).  "On a [Rule] 12(c) motion, the court [may] consider[] the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice."  *Id.* at 422 (citation and internal quotation marks omitted).  A court also may consider "any writing attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that[] . . . are integral to the complaint."  *Id.* (internal quotation marks omitted).

Cataclean Americas attached various materials to its motion, including the covenant between Baigent and other Cataclean Americas members, a series of corporate documents purportedly demonstrating Baigent's connection to Rosehoff and

this case, and an affidavit that Baigent submitted in a state court case.  Docket Items 11-2, 11-3, 18-1.  But Cataclean Americas does not explain how, on this motion to dismiss, this Court could consider those materials—and especially the covenant that provides the basis for its arguments.  Nor is that clear to this Court: the covenant is not incorporated into or even referenced by the amended complaint, and it does not appear to be the type of document subject to judicial notice.  Because the merits of Cataclean Americas' motion to dismiss rise and fall with its attached documents, and because at least one of those documents cannot be considered on a Rule 12(c) motion, *see L-7 Designs*, 647 F.3d at 422, Cataclean Americas has not demonstrated that dismissal is appropriate at this stage.

Although Cataclean Americas cannot rely on those documents on a Rule 12(c) motion, this Court could again convert Cataclean Americas' motion—this time to a motion for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  But Cataclean Americas has not asked this Court to do so, even after Rosehoff raised that possibility in its responding papers.  *Compare* Docket Item 17-9 at 5 (Rosehoff's arguing that "if this Court were to find [Cataclean Americas'] motion procedurally proper, [it] must be converted into a motion for summary judgment"), *with* Docket Item 18 (Cataclean Americas not responding to that argument).  And in its reply, Cataclean Americas included a new document that purportedly further demonstrates Baigent's involvement in this lawsuit.  *See* Docket Item 18-1.  In light of that, this Court declines to convert Cataclean Americas' motion to dismiss into a motion for summary

judgment.  *See 42-50 21st St. Realty LLC v. First Cent. Sav. Bank*, 2022 WL 1004187, at *1 n.1 (E.D.N.Y. Apr. 4, 2022) ("The continued introduction of evidentiary materials [in the defendants' reply] argue[s] against converting the motion."); *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 295 (S.D.N.Y. 2018) ("[T]he majority of cases in this district only convert [Rule] 12(b)(6) motions to ones for summary judgment where a party has explicitly asked for that relief."); *Silver v. Entergy Nuclear Operations, Inc.*, 2015 WL 7430869, at *2 (S.D.N.Y. Nov. 19, 2015) ("Although the Court could . . . convert[] the motion to dismiss into a motion for summary judgment, the [defendants] have not asked the Court to convert the motion, and the Court[] . . . declines to do so." (citation omitted)); *see also Troy v. City of New York*, 2014 WL 4804479, at *1 (S.D.N.Y. Sept. 25, 2014) ("The Court does not rely on factual assertions made for the first time in [an] opposition brief.").

For all those reasons, Cataclean Americas' motion to dismiss is denied.

## II.     ROSEHOFF'S MOTION FOR SUMMARY JUDGMENT

In its motion for summary judgment, Rosehoff contends that "this case only has two legal[] issues: (i) was the termination of the licensing agreement between [Cataclean Americas] and Systems Products . . . proper and/or has the statute of limitations run on challenging the termination, and (ii) if the answer to question one is yes, does [Cataclean Americas'] [] name . . . violate[] the Cataclean trademark."  Docket Item 17-9 at 8.  In response, Cataclean Americas maintains that the license agreement cannot be terminated and that Rosehoff's trademark infringement claim lacks merit.  Docket Item 22-3.  For the reasons that follow, this Court concludes that Rosehoff has

not clearly demonstrated that the license agreement can be revoked and therefore denies Rosehoff's motion.

### A.     Ambiguity in the License Agreement

"When deciding a summary judgment motion, a court must construe all the evidence in the light most favorable to the nonmoving party . . . and draw all inferences and resolve all ambiguities in that party's favor."[4]  *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008).  "This generally means that a motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning."  *Id.*  "To the extent the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case."  *Id.*

---

[4] Although Rosehoff maintains that the license agreement "must be interpreted by the laws of England and Wales," Docket Item 24-1 at 5, it offers only one citation to English or Welsh contract law—a "Practical Law Country Q&A"—and it cites that source only for the proposition that the statute of limitations for breach of contract claims is the same under New York law and English and Welsh law.  *See* Docket Item 17-9 at 11.  Rosehoff's remaining citations are to federal or New York case law.  *See, e.g.*, Docket Item 24-1 at 4 (arguing that "[t]he words and phrases used by the parties must, as in all cases involving contract interpretation, be given their plain meaning" (citing *Brooke Grp. Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534, 663 N.E.2d 635, 638 (1996)).  The defendants likewise do not offer any citations to foreign contract law.  *See, e.g.*, Docket Item 22-3 at 3-4 (citing federal and New York case law).  "In view of the parties' briefing," the Court "assume[s] that they do not rely on any distinctive features of English law and . . . therefore base[s] [its] decision on general contract law principles."  *See John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.); *see also Azima v. RAK Inv. Auth.*, 926 F.3d 870, 876 (D.C. Cir. 2019) (same); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007) (same).

Rosehoff argues that the license agreement's terms unambiguously show that it "was both revocable and non-exclusive" and that System Products therefore validly terminated the agreement. Docket Item 17-9 at 9. But that argument is difficult to square with the plain text of clause 3.1 of the agreement, which says precisely the opposite. *See* Docket Item 17-5 at 5 ("The Licensor grants to the Licensee an exclusive irrevocable licence [sic] to use the Intellectual Property in the Territory to distribute market [sic] and sell and to solicit orders . . . ."). And while Rosehoff argues that reading clause 3.1 of the agreement to create an exclusive, irrevocable license would render its termination provisions meaningless, reading the agreement to create a non-exclusive, revocable license would render *that* provision meaningless. *See State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 357-58 (S.D.N.Y. 2020) (rejecting a "proposed interpretation [that] would give no effect to the term 'irrevocable'" because "contracts must be construed to give a reasonable and effective meaning to all terms and not to leave a part unreasonable or of no effect" (alterations, citation, and internal quotation marks omitted)). So at this stage, this Court cannot conclude that the license agreement unambiguously provides for a revocable, non-exclusive license in light of the agreement's plain language to the contrary. *See Casolaro v. Armstrong*, 2014 WL 7370025, at *7 (E.D.N.Y. Dec. 29, 2014) (concluding that "contradictory provisions" contained in a contract "plainly create an ambiguity").

Although Rosehoff does not point to any extrinsic evidence that could resolve that ambiguity, extrinsic evidence offered by the defendants might reasonably support both parties' interpretation. In their response to Rosehoff's motion for summary judgment, the defendants offer an email exchange between Rosehoff's principals that

12

later was forwarded to the Gannons.  *See* Docket Item 22-2 at 4-8; Docket Item 24-1 at 4.  In that exchange, Rosehoff's representative says that clause 3.1 of the license agreement, which he refers to as "3.1 Non exclusive [sic] revocable license[,] [l]ooks the opposite to what you want and it is."  Docket Item 22-2 at 5.

Rosehoff maintains that this exchange demonstrates that the agreement provided only for a non-exclusive, revocable license.  Docket Item 24-1 at 4-5.  But that exchange itself is ambiguous.  Rosehoff's representative could be saying that the language ultimately included in clause 3.1—"an exclusive irrevocable licence [sic]," *see* Docket Item 17-5 at 5—was the "opposite" of the parties' intentions.  But the exchange could just as easily be interpreted the opposite way: that a "[n]on exclusive [sic] revocable license" is the "opposite of what you want."  Docket Item 22-2 at 5.  And in light of those ambiguities, summary judgment is not warranted on the basis of any extrinsic evidence.  *See Topps Co.*, 526 F.3d at 68.

Finally, Rosehoff argues that the terms "irrevocable" and "exclusive" are "nothing more than [] typo[s] or [] scrivener's error[s]."  Docket Item 17-9 at 11.  "In contract law, a scrivener's error, like a mutual mistake, occurs when the intention of the parties is identical at the time of the transaction but the written agreement does not express that intention because of that error."  *Wilton Reassurance Life Co. of N.Y. v. Smith*, 2015 WL 631973, at *16 (E.D.N.Y. Feb. 13, 2015).  "Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected."  *Washington v. NYC Med. Prac., P.C.*, 2021 WL 918753, at *5 (S.D.N.Y. Mar. 10, 2021).

13

Other than gesturing toward the other contract terms, however, Rosehoff does not offer any evidence suggesting that the parties' intent was "identical" at the time of transaction or that the language at issue was an error. *See Wilton Reassurance Life Co.*, 2015 WL 631973, at *16. And as explained above, this Court finds those terms and other extrinsic evidence to be ambiguous. So at this stage, Rosehoff has not demonstrated that clause 3.1 contains a scrivener's error subject to reformation.

B.     **Limitations**

Having found that the license agreement is ambiguous, the Court turns next to Rosehoff's second contractual argument. Rosehoff maintains that even if the license agreement could be construed as ambiguous, any challenge to System Products' termination is time barred and Cataclean Americas therefore cannot argue that the license remains in effect. *See* Docket Item 17-9 at 11.

But that argument again assumes that the license agreement is revocable. If the license agreement is truly irrevocable, then System Products could not terminate it. *See Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 400 (5th Cir. 2008) ("The term irrevocable is defined as 'unalterable; committed beyond recall' or 'impossible to retract or revoke.'" (alterations omitted) (first quoting *Black's Law Dictionary* 848 (8th ed. 2004); next quoting *The American Heritage College Dictionary* 719 (3d ed. 1993)); *see also id.* ("Based upon the unambiguous meaning of 'irrevocable,' we find that the [agreement] could not be terminated, notwithstanding a material breach of the agreement. Otherwise, the terms 'irrevocable' and 'perpetual' would be rendered superfluous, in contravention of established rules of contract interpretation."); *Drut Techs., Inc. v. Microsoft Corp.*, 2022 WL 2156962, at *5 (W.D. Wash. June 15, 2022) ("By expressly

describing the license as 'irrevocable,' the parties contemplated that the license could not be revoked under any circumstances."); *State St. Glob. Advisors Tr. Co.*, 431 F. Supp. 3d at 357-58 ("Put simply, [the would-be revoking party] cannot seek to revoke an irrevocable license."). And if that is the case, then the license agreement would have remained in effect. Rosehoff's statute of limitations argument therefore misses the mark.

For all those reasons, this Court concludes that the license agreement is ambiguous, that Rosehoff has not shown that its conflicting terms can be explained as a scrivener's error, and that challenging the purported termination of the agreement is not time barred. And because Rosehoff concedes that the defendants' liability on Rosehoff's substantive claims rises and falls with its interpretation of the revocability of the license agreement, *see* Docket Item 17-9 at 8, the Court need not and does not pass on Rosehoff's other arguments that the defendants violated the Lanham Act.[5] Rosehoff therefore has not shown that it is entitled to summary judgment at this stage.

---

[5] The Court notes, however, that Rosehoff's motion addresses only its trademark infringement claim under the Lanham Act; Rosehoff does not otherwise address its six remaining claims. *See* Docket Item 17-9 at 12-15. So it is not clear why Rosehoff would be entitled to judgment as a matter of law on those other claims.

## **CONCLUSION**

For the reasons stated above, Cataclean Americas' motion to dismiss, Docket Item 11, and Rosehoff's motion for summary judgment, Docket Item 17, are DENIED.

SO ORDERED.

Dated:  November 28, 2022
        Buffalo, New York

                                    */s/ Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE